WAKEFIELD (LAMB v.). See Case No. 8,024.

## Case No. 17,050.

### WAKEFIELD v. ROSS.

[5 Mason, 16.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1827.

BOUNDARIES—CONSENT AND ACQUIESCENCE—DEEDS—DESCRIPTION—QUIT-CLAIM BY PERSON DISSEIZED—COMPETENCY OF WITNESSES.

1. Where a boundary is disputed between parties who own adjoining tracts of land, and they agree to erect a fence on what is supposed to be the true boundary, and the possession continues according to that line for twenty years, in the absence of all counter proof of any other actual boundary, that line ought to be deemed the true one, and to conclude persons claiming under them by subsequent conveyances.

[Cited in Tolman v. Sparhawk. 5 Metc. (Mass.) 476; Abbott v. Abbott. 51 Me. 585; O'Donnell v. Penney, 17 R. I. 166, 20 Atl. 306.]

2. Where A. owned the head lot No. 18, and sold to B. forty acres on the east end of that lot, and afterwards sold to C. by the following description: "a certain tract or parcel of land situate, &c. and contains thirty acres by measure," being "the west part of the head lot No. 18," it not being shown, that the parties at that time knew, that the whole lot contained more than seventy acres, although in fact it did contain more; it was held, that the deed to C. conveyed all the land in the lot, not conveyed to B., and was not limited to thirty acres at the west end of the lot. There being actual boundary lines afterwards stated in the same deed, it was farther held, that those boundary lines must govern, even if they included more than thirty acres.

[Cited in Eaton v. Rice. 8 N. H. 381; Orr v. Hadley, 36 N. H. 578.]

3. Where a party is disseized, he cannot convey by a quitclaim deed his title to the premises of which he is disseized.

4. Persons who do not believe in the existence of a God. or in a future state of existence, are not competent witnesses.

[Cited in Scott v. Hooper. 14 Vt. 539.]

[Cited in Thurston v. Whitney, 2 Cush. 110.]

Ejectment [by Ebenezer Wakefield] for lands situate in Rhode Island. The defendant [Lemuel Ross] pleaded, 1. not guilty: 2. the stat-

---

[1] [Reported by William P. Mason, Esq.]

ute bar of twenty years' possession under the statute of Rhode Island for quieting possessions. To the last plea there was a replication denying the twenty years' possession. Issues being joined on both pleas, the cause was tried at this term, when the material facts and evidence were as follows:

The plaintiff's demand was for two contiguous parcels of land, one of which he claimed as owner of the south part of the head lot No. 17, and the other as the owner of the east part of the head lot No. 18, of which last the defendant owned the west part. These head lots are lots which were set off to the original proprietors of lands in Providence county after a revision of the boundary line between Rhode Island and Connecticut, and lying between the line first erroneously drawn for a boundary between the two states and the line since established.

The titles and claims of the parties to the first parcel of land, viz. the south part of the head lot No. 17, were as follows: In 1788, Samuel Eddy, under whom the plaintiff claimed the first parcel of land above mentioned, purchased a tract of land lying in the southwest corner of head lot No. 17, of one Stephen Bowen, and subsequently conveyed the same to his son Samuel Eddy, Jun., bounding him on the land of Bradley Greene, the defendant's grantor, then the owner of the whole head lot No. 18, lying south of No. 17. The validity of the title deeds exhibited in this part of the case admitted of no controversy; the plaintiff deduced his title through several mesne conveyances, from Samuel Eddy, on the one side; the defendant, on the other, proved his deed from Bradley Greene conveying the west part of lot No. 18, dated December 5th, 1801, and the question here was wholly in relation to the boundaries between lot No. 17, and lot No. 18, and the possession of the parties. Previous to the last mentioned conveyance, and while Eddy and Greene were respectively owners and in possession of these contiguous lots, a dispute arose between them in regard to the western part of their dividing line. It did not appear at that time to be controverted, that a certain black-birch tree on the east side of the head lots was a dividing boundary between Nos. 17 and 18, and that the line was thence a straight course westerly to a large rock; but the remainder of the line from that rock out to the state line was in dispute, Greene contending, that he was entitled to go farther north than a fence that stood there, and Eddy insisting, that the line was farther south. One of the sons of Eddy (who was produced on the trial as a witness by the defendant) was thereupon called in to assist the parties in adjusting and settling the line. Upon his decision and advice the line was then settled, and the fence was placed accordingly. No farther controversy in respect to this line appeared to have arisen until the plaintiff, having become possessed of the Eddy title, brought an action against the present defendant in the state court of common pleas in the year 1824, and therein claimed a quantity of land south of the above line. This action was discontinued without a trial; and after taking a deed from Bradley Greene of another piece of land, as hereinafter stated, the plaintiff commenced this suit. To support his claim south of the defendant's fence, and of the line between the rock and birch tree, he produced extracts from the proprietors' records, and the copy of an ancient plat, showing, that lot No. 17 was originally of greater width from north to south than the adjoining lots, an allowance being made on account of a body of water, called Long pond, contained within it. He did not, however, prove the original boundaries of the north side of that lot, but examined several witnesses who testified, that the former owners of the south part of it, under whom he claimed, had anciently sowed a field south of the abovementioned rock, and, in some instances within twenty years, had cut young wood, for hoop-poles and other purposes, south of the line between the rock and birch tree.[2] This testimony was relied on as proof of the original boundaries and of interruptions to the defendant's possession.

It was answered on the part of the defendant by proof, that the sowing of the field was before the settlement of the line; that the cutting referred to was not with the intention to dispute the line from the birch tree to the rock, but from ignorance or mistake as to where that line, when drawn through the whole extent of the woodland, would fall; and that when the error was discovered, no claim of right was pretended, but the persons by whom or by whose authority the cutting was done (one of them a grantor of the plaintiff) paid the defendant for the wood so cut. The defendant also proved all the exterior bounds of lot No. 18,

---

[2] With respect to two of the witnesses, a father and son of the name of Richardson, the counsel for the defendant objected to their admission, as witnesses, upon the ground of their want of any religious belief; and to establish the fact a witness was called, who swore that he knew the persons well, that he had often heard the son say, that he did not believe in the existence of a God, or of a future state. As to the belief of the father, he said, that he had heard him declare, that he did not believe in a future state; that he had read Tom Paine's works; and did not know, whether he (the father) believed any thing. In answer to a question from the court whether the father believed in a state of rewards and punishments, the witness answered only as before, adding, that from the statements of the father he did not seem to believe any thing. It was then suggested on the part of the plaintiff's counsel, that the father and son might be examined personally as to their belief, for the father might be an Universalist. To this suggestion the court answered, that the defendant's counsel, who took the objection, were not bound to rely on the testimony of these persons for proof of incompetency. The court said: "We think these persons are not competent witnesses. Persons who do not believe in the existence of a God, or of a future state, or who have no religious belief, are not entitled to be sworn as witnesses. The administration of an oath supposes, that a moral and religious accountability is felt to a Supreme Being, and is the sanction which the law requires upon the conscience of a person, before it admits him to testify."

as claimed by him; that the birch tree and rock had been known as bounds more than thirty years by the witnesses sworn: and that his fence had remained in the place where it now stood ever since the settlement of the line by Eddy and Greene, which was more than twenty years before the commencement of the plaintiff's first suit. The copy of the ancient plat introduced by the plaintiff was also relied on by the defendant as showing, that the north line of lot No. 17 was originally much farther north than now supposed by the plaintiff, as appeared by the platted distance of that line from the northern margin of Long pond, and that the whole width of that lot might be found by going to that original line from the aforementioned birch tree.

The other parcel of the demanded premises, lying within lot No. 18, was claimed by the plaintiff as grantee of Bradley Greene, by a quitclaim deed, executed in August, 1825, and hereinafter mentioned. It appeared in evidence, that on the 24th of August, 1801, Bradley Greene, then being the owner of the whole of lot No. 18, much of which was wild and uncultivated, conveyed to one Jacob Woodland, a parcel thereof at the east end, by the following description, viz.: "One certain tract or parcel of land, situate &c., it being part of the head lot, so called, belonging to the said Bradley, and No. 18, bounded as follows, beginning at the southeast bound of said lot, thence northerly sixty rods, then west the same width, bounding on the south line of said lot, to extend so far west, as to include forty acres by measure." Under this deed, Woodland went into possession up to a ridge called "Ridge Hill," extending across the lot from north to south, as his western boundary, and improved and occupied the land to that boundary until A. D. 1810, when he sold it; and the same after several intermediate conveyances came to the plaintiff Wakefield, in April, 1824, by a quitclaim deed from William Ross, by which Ross released to him the same, by the following description, viz.: "All the right, title, and interest, that I have, or ever had, in one certain tract of land, situated &c., containing forty acres, and being the easterly part of lot No. 18, bounded as follows: beginning at a white-oak tree, a bound of David Allen and Ziba Ross, then westerly joining Ziba Ross's land 80¾ rods to a stake and stones; thence northerly, 73 rods to No. 17, to a stake and stones; thence easterly, joining No. 17, to a black-birch 80¾ rods; thence southerly, straight to the first bound." On the 5th of December, 1801, Bradley Greene conveyed to the defendant, Ross, another parcel of the lot No. 18, on which he now resides. The description in the deed is as follows: "One certain tract or parcel of land, situate &c., and contains thirty acres by measure, being the west part of the head lot, called 'No. 18,' and bounded as follows: viz. beginning at a stump of a staddle with stones about it, standing on the state line, and being the southwest corner

bound of the 17th head lot; thence east, adjoining said lot, eighty rods to a stake and stones; thence south sixty rods to a stake and stones, thence west eighty rods to the state line; thence north on said line, to the first mentioned bound." Under this deed the defendant, Ross, took immediate possession, and occupied, and cut wood up to the same Ridge hill, as the boundary between him and Woodland, and assented to by both. The contiguous land on the north, in some of the deeds, under which the plaintiff holds his title thereto, is described as bounded on the south by the defendant's land, and the said Woodland's lot, without any intimation of, or any reference to, any strip of land intervening between them. There was no proof, that Bradley Greene, after his conveyance to the defendant in 1801, was, or claimed to be, in possession of any part of lot No. 18, or that he did any act indicating ownership, or a belief on his part that he had not conveyed the whole of that lot, until the deed of 1825, mentioned below. On the contrary, it appeared, that he became poor; that he was not assessed for any property in the town in which the lot lay; and in the year 1823, being confined in gaol for debt, he made his complaint to a magistrate in conformity with the statute of Rhode Island, setting forth that he had no property wherewith to support himself in prison, or pay prison fees, and was thereupon admitted to the poor debtor's oath and discharged. It was ascertained, that the lot No. 18 really contained more than the quantity of seventy acres; and sometime in August, 1825, the said Bradley Greene executed a quitclaim deed to the plaintiff, Wakefield, of sixteen acres and 100 rods of land, describing it as lying between the land conveyed by his former deeds to the defendant, Ross, and that conveyed to Jacob Woodland, in lot No. 18. The deed was proved to have been signed at the plaintiff's house in Connecticut, a short time before the death of Greene, but it was not dated nor acknowledged, and although the consideration expressed in it was seventy dollars, that was not shown to have been paid; but the plaintiff proved, that on signing the deed, Greene received of him two pigs and five sheep. Under this last deed the plaintiff claimed to recover of the defendant, the land described therein, the same being in the defendant's possession.

Mr. Steere, for plaintiff.
J. L. Tillinghast, for defendant.

For the plaintiff it was contended, as to the south part of lot No. 17, that there had not been 20 years' exclusive possession sufficient to introduce the bar of the statute. That the possession was mixed, and was intended to be according to the true boundaries between lots No. 17 & 18. Bradley Greene sold by metes and bounds, and measure. If the possession was not mixed, the evidence established that the possession was in the plaintiff at the time of the defendants' purchase from Bradley Greene. As to the other parcel of land, part

of lot No. 18, it was contended, that Bradley Greene was the owner of the whole. He sold at the east end of it forty acres only to Woodland. Afterwards, he sold only thirty acres at the west end to Ross. The whole lot contained sixteen acres more than the seventy acres sold; and this intermediate strip, the residuum of the lot between the parts sold on the eastern and western ends, was left in Bradley Greene, and the plaintiff by his purchase from Greene, in August, 1825, was entitled to recover it. The defendant contested both points; and argued, that the plaintiff had shown no title to a recovery for either parcel of the land now demanded.

STORY, Circuit Justice (charging jury). The question, as to the first parcel of land in controversy, turns upon a mere point of boundary between the lots No. 17 and No. 18.—The question is, whether the land now possessed by the defendant, Ross, as the northern boundary of lot No. 18, includes any portion of the land belonging to lot No. 17. It is often matter of extreme doubt, how the exact boundaries run in cases of laying out lots or this nature. If the black-birch tree on the east side of the lot, No. 17, was an ancient boundary, and was so deemed by the respective owners in former times, and the line ran from thence west in a straight line to the large rock, spoken of, then we have arrived at some certainty. The question in dispute will then be narrowed down to the running of the boundary from that rock to the west line of the lot.—There is evidence in the case that at the time when Samuel Eddy was owner of the part of lot No. 17, now owned by the plaintiff, and Bradley Greene was the owner of lot No. 18, a dispute arose between them as to the boundary line on this part of their lots; and it was then adjusted and settled between them by one of Eddy's sons, and the fence put up accordingly; and that the possession has remained in the respective occupiers of the lots according to that line ever since. This was before the year 1801, when the defendant purchased from Bradley Greene. Now if this evidence is believed it is decisive of this part of the case. In the first place, as mere evidence of the true boundary, in a case like the present, what can be so satisfactory as such a settlement of boundaries made more than twenty years ago by the parties interested, and acquiesced in by themselves, and those, who claim under them, ever since. It would seem of itself almost conclusive as a presumption of right in the absence of all circumstances to rebut it. In the next place, if the parties have been ever since that period in exclusive possession and seizin of the lots according to this boundary, then the persons, under whom the plaintiff, Wakefield, claims title, were at the time of the conveyance to him disseized of the land now in controversy, even if they had a title to it; and consequently the deed conveyed nothing to him in the land, of which his grantors were then disseized. This is a plain principle of the common law. But what is quite conclusive is, that such an exclusive possession for twenty years is a clear bar to any recovery, and is of itself a good title, by the express provisions of the statute of Rhode Island. The jury will therefore consider, whether this evidence is overthrown by any counter evidence in the case; and if not, whether it establishes such an exclusive possession. If so, their verdict ought to be for the defendant on this part of the case.

Then as to the other parcel of land, the intermediate strip, as it is called, in lot No. 18. It is true, that the deed of Bradley Greene to Jacob Woodland conveys so much only of the east end of the lot No. 18, as would include forty acres. This conveyance was made in August, 1801; and under it Woodland, if the evidence is believed, occupied and possessed up to the "Ridge Hill," so called, as his true boundary, without objection; and it has not been disputed, that his possession was then deemed rightful. William Ross, by mesne conveyances, held it as owner in 1824, and then conveyed it to the plaintiff, who has ever since his purchase continued to occupy and possess it up to the Ridge hill. In December, 1801, Bradley Greene conveyed a part of the same lot to the defendant, Ross, describing it in his deed as "a tract or parcel of land situate, &c., and contains thirty acres by measure, being the west part of the head lot called 'No. 18;'" and then specified its boundaries. The question is, what part of the lot is intended by this description? It is said, that thirty acres only was intended to be conveyed; but there is no evidence to show, that the parties at that time knew or supposed, that the whole lot No. 18 contained more than seventy acres. No boundaries are stated in the deed, which establish any reservation to Bradley Greene of any strip on the eastern side of this part of the lot. No claim was ever made by him to any such strip, until he executed the quitclaim to the plaintiff in August, 1825. He never was assessed for it in the town taxes; he did not, when he was liberated from gaol on account of his insolvency, assert it to be his property; but swore generally, that he had no property to support himself in gaol. The defendant has always possessed and occupied the whole of that part of the lot to the Ridge hill without objection, and cut wood there, as a part of the land conveyed by his deed. I state these, as facts, only upon the supposition, that the evidence in the case is believed by the jury; and of that they will judge; but if these are the facts, then they establish an exclusive possession in the defendant for more than twenty years, and consequently the statute of Rhode Island, of twenty years' possession, applies as a bar. Independently of that, the quitclaim of 1825 could not operate, because the defendant, Ross, was then in possession under a claim of right, and if he had no right, he was in under a disseizin. But I am by no means satisfied, that the deed from Bradley Greene to the defendant in December, 1801, requires such a construction, as the plaintiff seeks to give it. The grantor had already conveyed forty acres on the east end of

the lot. He does not in his conveyance undertake in terms to convey thirty acres and no more at the west end of the lot. The words of the deed are, "a certain tract or parcel of land situate &c., and contains thirty acres by measure, being the west part of the head lot called 'No. 18;'" the measurement is, therefore, not the whole, but a part only of the description. It was not thirty acres, but "the west part of the head lot," which was intended to be conveyed. The east part was already sold; and it appears to me, that the true meaning of the deed, if the description had stopped here, would be, that it conveys the west part of the lot, as contradistinguished from the east part of the lot already sold. It would be a conveyance of all that part of the lot not already sold as the east part. The measure of thirty acres is not a limitation upon the extent of the grant, but a mere description of its supposed contents. If the words "contains thirty acres by measure" had been left out, the construction of the deed must have been, such as I have intimated. The insertion of them does not, in my judgment, justify a change of that construction in a legal point of view. But the description of the premises sold does not stop here. The deed goes on to state the boundaries of the west part of the lot so sold. Now it is a general rule, that where there is a specific description by natural or artificial boundary lines, distances and quantity of contents must yield, if mistaken, to such lines. The parties are presumed to contract with reference to such known lines or objects; and the insertion of distances or measure of acres is understood to be no more than a conjectural or probable estimate. In the present case, there is no evidence to establish, that the boundary lines stated in the deed do not include the whole land in the lot No. 18 not conveyed to Woodland, or in other words, the whole land west of the Ridge hill. On the contrary, it seems tacitly admitted, that, so far as those lines can now be traced, they are coincident with the defendant's claim and seizin. The whole difficulty, that has arisen, is from the supposed error in fixing the southeastern and northeastern boundaries of lot No. 18. If these are the white-oak and black-birch tree referred to by the witnesses, then much of the difficulty vanishes. The stress of the argument, therefore, for the plaintiff, necessarily rests on the ground, that by the true construction of the deed from Bradley Greene to the defendant, Ross, no more than thirty acres of land were intended to pass; and that consequently, as lot No. 18 actually contains eighty-six acres and one hundred rods, the intermediate strip, of sixteen acres and one hundred rods, being the surplus beyond the forty acres conveyed in 1801 to Woodland, and the thirty conveyed to the defendant, Ross, remained in Bradley Greene, and were well conveyed by the quitclaim deed of August, 1825, to the plaintiff. Now it is incumbent upon the plaintiff to establish the fact of such a strip remaining in Bradley Greene at the time of that conveyance. He has not shown,

that the boundary lines stated in the conveyance from Greene to the defendant, Ross, would not include all the land to the Ridge hill, of which the defendant, Ross, is in possession. He has been obliged, therefore, to resort to a construction of the deed to Ross, which would limit the conveyance to him to thirty acres only by admeasurement, rejecting all the accompanying parts of the description of the premises. In this construction also he has failed. And in the last place the objection of a disseizin of Bradley Greene at the time of the conveyance in 1825 is decisive against any right of recovery under that conveyance, even if every other objection were removed.

Verdict for the defendant on both pleas, and judgment accordingly.