MARCH TERM 1843. 469

Boston and Worcester Rail Road Corporation & Tolman *v.* Sparhawk & others.

THE BOSTON AND WORCESTER RAIL ROAD CORPORATION
*vs.* GEORGE SPARHAWK & others.

MARY TOLMAN *vs.* THE SAME.

Where parties agree, though by parol only, upon a divisional line between their ad-joining lands, and afterwards hold possession conformably to such line, the pos-session of one is adverse to the claim of the other and amounts to a disseizin; so that a deed by one, purporting to convey the land thus in possession of the other, passes nothing to the grantee.

Where owners of adjoining lands, intending to establish the divisional line according to the true boundary, agree, by parol, on a line that does not conform to such boun-dary, and afterwards hold possession according to such conventional line, such agreement, so made by mistake, and the possession under it, do not estop the par-ty, who has suffered by the mistake, from asserting his title to the land that lies between the true boundary line and such conventional line, and recovering the same in a real action seasonably brought; especially if the tenant in such action has not made improvements on the demanded premises of greater value than the land without the improvements, and for which he is not entitled to recover of the demandant.

The *St.* of 32 Hen. 8, *c.* 33, which is a part of the common law of this State, and which provided that no descent to the heir of a disseizor, who had not had peace-able possession for the space of five years next after the disseizin, should toll the entry of him who has right to the land, extends not only to disseizins by actual ex-pulsion, but also to all disseizins whereby, on the death of the disseizor, a descent is cast on the heir.

THESE were writs of entry, in which the several demandants sought to recover of George Sparhawk and Mary S. his wife, and Paschal P. Pope, the same parcel of land, viz. a narrow piece of flats situated in a cove at the southerly part of Boston, westerly of Washington Street. Writs dated Feb. 9th 1842.

At the trial, before *Wilde*, J. it was admitted that Robert P. Tolman and Mary his wife, in her right, were lawfully seized in fee, prior to the year 1822, of a parcel of upland on Washington Street, and of the flats legally appurtenant thereto; and that Johnson Jackson (the father of Mary S. Sparhawk, one of the tenants, and of Benjamin C. Jackson, under whom Paschal P. Pope, another of the tenants, claims title) was lawfully seized of another parcel of upland on Washington Street, adjoining northerly on said land of Tolman and wife, and of the flats le·gally appurtenant thereto; and that said Johnson Jackson died so seized, on the 16th of November 1824.

The Rail Road Corporation, demandants in the first action, put into the case a deed from said Robert P. Tolman, (who died on the 5th of September 1839,) and Mary his wife, in her right, dated May 7th 1833, whereby they conveyed to said corporation their said upland on Washington Street, " and all the flats legally appurtenant thereto." They then called Stephen P. Fuller as a witness, who testified that the southerly line of the demanded premises (as laid down on a plan which he produced) was the line fixed by the decision of the court in the suit heretofore instituted by Sparhawk and wife,* as the northerly line of the Jackson estate : That he was employed, under the direction of the court, in that case, to lay down the lines dividing a section of the cove, and that this line between the Tolman estate and the Jackson estate was one of those lines : That the plan which he produced was made by him, and that the southerly line of the demanded premises, as described in the demandants' writs, was the line fixed by the court, as above mentioned, and as laid down on said plan.

The witness was then examined by the tenants ; and he testified, that on the 24th of August 1822, Edward Tuckerman, (who owned a lot bordering on the cove, and next southerly of the Jackson lot,) Johnson Jackson, Robert P. Tolman, and Thomas Brewer, (who owned the lot next northerly of the Tolman lot,) met on the land for the purpose of running the lines on the flats : That they agreed that Tuckerman's line should run parallel with Castle Street, (a street running westerly from Washington Street to the cove,) and 73 feet and 4 inches distant therefrom ; that Jackson's line should run 67 feet and 10 inches from Tuckerman's, and the line of the Tolman lot 94 feet from Jackson's : That on the 29th of the same August, the witness ran out these lines, and that stakes were driven into the mud, from 50 to 100 feet apart, to show said lines, and extended from 500 to 600 feet down on the flats : That after the Rail Road Corporation purchased of Tolman and wife, and before they purchased a piece of land of Mary S. Jackson, (now

---

See *Sparhawk & wife* v. *Bullard,* 1 Met. 95, 108.

Mrs. Sparhawk,) the witness made a plan for the corporation, in which the abovementioned conventional line was laid down as the dividing line between the Tolman and Jackson flats : That in 1836 or 1837, the city government caused a part of the Jackson flats to be filled up, from about two or three feet south of this conventional line : That the earth was brought in by the Rail Road Corporation, who were paid therefor by the city ; and he understood that the city charged the expense to Mrs. Sparhawk : That he never knew that any question was made about this conventional line, until the suits were brought by Sparhawk and wife, in which the court decided that it was not the true line : That a house (called the Gouch house) was built in 1824, below high water mark, and that its rear now stands on this conventional line : That there was no particular occupation of these flats, below the Gouch house, until recently : That he did not know that said stakes were ever pulled up ; but that his attention was not particularly called to them : That in 1833, when the deed from Tolman and wife was made to the Rail Road Corporation, he believed there was nothing on the flats to designate the lines ; that he then saw no stakes ; and that all the flats lay open, from Orange Street round to Claflin's lot on Pleasant Street, and including the demanded premises : That he never saw Mary Tolman, and did not know that she had any knowledge of the settlement of the line.

The tenants then put in a deed from said Mary Tolman to said Mary S. Sparhawk, dated June 1st 1841, releasing the land which, by the conventional line, would be a part of the Jackson estate, but which, by the true line, was a part of the Tolman estate : (This deed was introduced merely as evidence of the confirmation of the agreement of August 1822, as to the lines of division, and with an express understanding and declaration, that it should not be relied on by the tenants as an estoppel.) Also a deed, dated December 10th 1833, from Mary S. Jackson (now Mrs. Sparhawk) to the Boston and Worcester Rail Road Corporation ; and two deeds from Benjamin C. Jackson to Paschal P. Pope ; these three deeds being also introduced as further evidence of the confirmation, by the grantors, of said agreement of August 1822.

*C. P. Curtis & B. R. Curtis*, for the respective demandants. If Mrs. Tolman was not disseized of the demanded premises, when her deed was made to the Rail Road Corporation, the corporation is entitled to recover. And it is submitted, that she was not disseized by Jackson ; that there was not such an inclosure of the flats, nor such actual, positive and notorious occupancy by him, as amounted to a disseizin. *Jackson v. Schoonmaker*, 2 Johns. 230. *Coburn* v. *Hollis*, 3 Met. 128, 129.

If, however, the court shall decide that Mrs. Tolman was disseized, then she is entitled to recover. It will be objected to her right of recovery, that her right of entry was tolled by the death of Jackson, the disseizor, and the descent cast on his heirs, before the change was made in the law on this subject by Rev. Sts. *c.* 101, § 5. But Jackson died within five years after the disseizin ; and therefore, by *St.* 32 H. 8, *c.* 33, (which is the common law of this State,) the right of entry was not tolled. Stearns on Real Actions, 65. 2 Pick. 489. 2 Met. 585. Besides ; Mrs. Tolman was under coverture at the time of the disseizin, and therefore had a right of entry after her husband's decease. Lit. § 403. Co. Lit. 246 *a.*

It will also be objected, that Mrs. Tolman is bound and estopped by the agreement between her husband and Jackson, as to the line. But she, as a feme covert, was not barred by that agreement, and would not have been, after her husband's death, even if she had personally consented to the new line. Com. Dig. Estoppel, C. The agreement, in this case, estops no party. The putting down of the stakes, to mark the line, constitutes no bar. Perhaps the filling up of the flats might avail the tenants, (according to some decisions in New York,) if it had been done by them. But this was done by the city ; and there is no evidence that it was paid for by the tenants. It is doubted, in *Parker* v. *Barker*, 2 Met. 423, whether there can be an estoppel *in pais*, as to real estate. And an agreement by parol, as to boundaries, does not bind the parties. *Whitney* v. *Holmes*, 15 Mass. 152. *Gove* v. *Richardson*, 4 Greenl. 327.

The cases, in which awards as to boundary lines have been held conclusive, stand on different reasons, and have no applica-

tion to the present case.   So of the cases in New York, where an open occupation, according to the agreed line, and an expenditure made by one party on the faith of the agreement, are held to estop the other party.   See *Adams* v. *Rockwell,* 16 Wend. 310, which shows the result of all the former decisions in that State.   In *Sawyer* v. *Fellows,* 6 N. Hamp. 107, the line was run by a surveyor, at the request of both parties, and was accepted, and a fence built thereon, and an occupation accordingly for ten years.   This case, therefore, falls within the doctrine of the New York cases.   But in the case at bar, there have been no acts which estop the parties.

*J. P. Rogers & Sparhawk,* for Sparhawk and wife.   The Rail Road Corporation cannot recover, because they took nothing by their deed, as the grantors were disseized at the time it was made.   The possession of Jackson and his heirs, under the agreed line of 1822, was adverse.   *Proprietors of Kennebec Purchase* v. *Laboree,* 2 Greenl. 280.   *Brown* v. *Wood,* 17 Mass. 74.   *Prescott* v. *Nevers,* 4 Mason, 326.   4 Kent Com. (3d ed.) 482.   *Ellicot* v. *Pearl,* 10 Pet. 442.   *Ewing* v. *Burnet,* 11 Pet. 52.

In order to convey the demanded premises to the corporation, the grantors should have entered and delivered possession on the land ; and they would have done so, if they had intended to convey them.   The corporation had knowledge of the adverse possession of Jackson's heirs.   See *Jackson* v. *Matsdorf,* 11 Johns. 97.   *Little* v. *Libby,* 2 Greenl. 242.   *Mason* v. *Muncaster,* 9 Wheat. 445.   *Small* v. *Procter,* 15 Mass. 495.

Nor can Mrs. Tolman recover ; for she had no right of entry when her action was commenced.   That right was tolled by the descent cast in 1824.   When the descent was cast, she had both a right of action and a right of entry.   2 Stark. Ev. 512. Stearns on Real Actions, 66.

The *St.* 32 H. 8, *c.* 33, applies only to tortious and forcible entries.   Co. Lit. 238 *a.*   Stearns, *ubi sup.*   In the case at bar, Jackson's entry was rightful.   *Cook* v. *Stearns,* 11 Mass. 537.   *Pond* v. *Pond,* 14 Mass. 403.   *Whitney* v. *Holmes,* 15 Mass. 152.   It is true, that the doctrine of disseizin has been

extended in this State ; but there is no adjudication which has also extended the operation of that statute.

*Robins*, for Pope. There is an estoppel *in pais*, by the agreement of 1822. *Sawyer v. Fellows*, 6 N. Hamp. 107. *Singleton v. Whiteside*, 5 Yerg. 18, and cases there cited. *Riggs v. Parker*, Meigs, 43. *Adams v. Rockwell*, 16 Wend. 285, and cases there cited. And this agreement estops Mrs. Tolman, though she was a feme covert when it was made. *Yarborough v. Abernathy*, Meigs, 419.

WILDE, J. * *The Rail Road Corporation*, demandants in the first of these actions, derive their title to the demanded premises by a deed from Robert P. Tolman and Mary his wife, in her right, bearing date May 7th 1833, who, as was proved or admitted at the trial, were lawfully seized in fee of a parcel of upland on Washington Street, and of the flats legally appurtenant thereto, prior to the year 1822 ; which, according to former decisions of this court, included the demanded premises. But it was proved at the trial, that on the 24th of August in that year, Johnson Jackson, (the father of Mrs. Sparhawk, one of the tenants,) E. Tuckerman, T. Brewer and Robert P. Tolman, agreed to run out the divisional lines of their lots over the flats, and that they were so run as to include the demanded premises within the flats belonging to the said Johnson Jackson ; that these lines were agreed to by the parties ; and that stakes were driven down in the mud, as the boundaries of their respective lots. There was no evidence to prove that these conventional lines were ever questioned previously to the conveyance from the said Tolman and wife to the demandants.

Upon these facts, the tenants contend that nothing passed by the deed of Tolman and wife to the demandants ; the grantors not being in possession of the premises at the time of the grant. And we are of opinion, that this ground of defence is clearly sustained by the evidence reported. By the agreement of the parties, the conventional lines were established as the true divisional lines of their lots, so far as they could by law be established by a parol agreement. From the time of that agreement, the possession of

* *Hubbard*, J. did not sit in these cases.

the flats demanded must be considered as being and continuing in Jackson and his heirs. And their possession was clearly adverse to the claim of Tolman and his wife. And they acquiesced in this adverse possession. They were therefore dispossessed and disseized ; and although this was in consequence of their own consent, yet they had no right in the premises besides a right of entry, or a right of action, which could not be legally conveyed to a purchaser.

*Judgment for the tenants.*

In the case of *Mary Tolman* against the same tenants, the same flats are demanded ; and the first question is, whether the conventional line of August 1822 is not conclusive as to the title, by way of estoppel. This question has been much discussed in the State of New York, and was very fully considered by the court of errors, in the case of *Adams* v. *Rockwell,* 16 Wend. 285. And the judgment of the supreme court was reversed by the concurring opinions of all the members of the court, (twenty-one being present,) with but one dissenting voice. In that case, it was decided, that where lands are described in a deed conveying the same, so that the location of the tract can be ascertained with certainty, the owner may assert his right to hold according to the true boundaries of his lands, although an encroachment has been made upon him by the owner of an adjoining tract, and though a line has been maintained by the occupant, in pursuance of such encroachment, and has been acquiesced in by the party encroached upon, for eleven years, if the lands in dispute are in a state of nature, and no other occupation has been had of them than the cutting down and carrying away of trees and timber ; but that if, during such acquiescence, *expensive improvements have been made by the occupant* upon the premises in dispute, the owner would be estopped from setting up the true line.

In several cases, however, the supreme court in New York have decided, that where the owners of two adjoining lots expressly agree to settle an uncertain or disputed line between their respective lots, the parties having full knowledge of their rights,

and the agreement being followed by occupation for a long time, and valuable improvements having been made on the land in dispute, such an agreement, under such circumstances, will conclude the parties, although it may be clearly shown that the conventional line did not conform to the true line. But in almost all the cases in which this principle is recognized, there had been an occupation, in pursuance of the agreement, for more than twenty years. And although these decisions are not overruled by the final decision of the case of *Adams* v. *Rockwell*, yet the principle on which some of them were decided is certainly questioned in the opinions delivered by the chancellor and another member of the court of errors. In this Commonwealth and in Maine, such a parol agreement, not followed by valuable improvements, has been held to be evidence of the accuracy of the line thereby established; though it is not conclusive to prevent either party from showing that it was settled erroneously. It was so decided in *Whitney* v. *Holmes*, 15 Mass. 152, and in *Gove* v. *Richardson*, 4 Greenl. 327. And the same doctrine was laid down by Story, J. in *Wakefield* v. *Ross*, 5 Mason, 16. In the latter case, it appeared that the owners of two adjoining lots of land had agreed to erect a fence on what was supposed to be the true boundary, and that the possession continued according to that line for twenty years; and it was held, that in the absence of all counter proof of any other actual boundary, that line ought to be deemed the true one.

In these cases, the question of estoppel was not discussed and considered, and whether, if considered, it would have altered the decisions, it is not necessary to decide.

That a parol agreement not in writing is valid, so as to pass any title to lands, cannot be maintained under any circumstances. It may justify the occupation of the lands by the respective parties, in pursuance of the agreement; and by such an occupation under a claim of right, if long enough continued, a legal title may be acquired. And such an agreement and occupation under it, though not continued twenty years, may perhaps, under certain circumstances, operate as an estoppel, according to some of the decisions in the New York cases. Under what circum-

stances such an agreement would be held to operate in that State, by way of estoppel, seems to be left doubtful by the decision of the court of errors in *Adams* v. *Rockwell*. But however this may be, we are well satisfied, that on principles of law well established, it cannot so operate, where the agreement to establish an erroneous line is founded on a mistake ; the parties supposing the line agreed upon to be the true boundary ; nor unless the occupant shall have made improvements on the premises, between the true and the erroneous lines, exceeding in value the value of the land without such improvements ; nor even then, if the occupant making the improvements may be entitled to recover from the owner of the land the value of the improvements. To hold, that under such circumstances a party might be prevented from asserting his title to his land, by the doctrine of estoppel, would be an evasion of the statute of frauds, and against manifest justice. And we think the present case falls within the distinction stated. We have good reasons to believe that the parties, who run out these erroneous lines, supposed them to be the true lines of their respective lots, and that they had no knowledge that they would intersect the lines of other lots further to the northward, belonging to owners who were not parties to the agreement. Mr. Sparhawk has attempted, at great expense, to maintain these conventional lines, which were eventually found to be erroneous, and were so adjudged by the court in several cases ; so that the parties to the agreement in question cannot hold their lands according to the agreement ; and to hold them nevertheless bound by the agreement *inter sese* would be manifestly unjust.

In the second place, whatever improvements have been made by the tenants, they will be entitled to receive the value of them from the demandant, unless she should elect to relinquish her estate according to the provisions of the Rev. Sts. *c.* 101, §§ 29 – 34. And thus equal justice will be done to both parties.

This case differs essentially from that of *Goodridge* v. *Dustin* (*ante*, 363). In that case, the divisional line between the lands of the parties was uncertain, and it was submitted to referees, by a rule of court, to settle the line, and their award

was held to be conclusive on the parties.   That reference was not founded on any mistake as to the true divisional line, and consequently the decision as to the conclusive effect of the award is not applicable to the present case.

Another ground of defence on which the tenants rely is, that the demandant's right of entry has been tolled by the descent cast upon the children of Johnson Jackson, on his death.   By the common law of England, the demandant's right of entry would be thus tolled, if Johnson Jackson is to be considered as a disseizor.   But by *St.* 32 H. 8, *c.* 33, it is enacted, that where one person disseizes or turns another out of possession, no descent to the heir of the disseizor shall take away the entry of him who has the right to the land, unless the disseizor has had peaceable possession by the space of five years next after the disseizin, without either entry or claim.   The common law, thus amended before the emigration of our ancestors, undoubtedly became afterwards the common law of this Commonwealth.   *Putney* v. *Dresser*, 2 Met. 585.   And as Johnson Jackson died in 1824, less than five years after the making of the conventional line and the occupation conformably thereto, this ground of defence fails.

It was argued, that the *St.* of H. 8 embraced only disseizins by actual expulsion ; but we think there is no ground for this distinction.   The statute was clearly intended to alter and amend the common law, and extended to all disseizins whereby on the death of the disseizor a descent in fee was cast on the heir.