## SAMUEL ABBOTT *versus* MOSES ABBOTT.

The defendant's deed described his land as the west half of a certain lot "as surveyed by I. J. & I. B. by order of the Court of Sessions;" but no survey of it had ever been made, except by one H. by whom a divisional line had been run, and according to which the parties had occupied, ignorant of the fact that the line did not equally divide the lot; in such a case, the language of the deed would seem to indicate an intention to convey a particular part of the lot, as already divided, and not an undivided part, yet to be divided.

If possible, the intention of the parties, as apparent in the deed, should govern its construction; and if the line intended by the parties can be ascertained, that must be conclusive.

It is well settled, that *what* the boundaries of land conveyed by deed are, is a question of law; *where* the boundaries are, is a question of fact. An existing line of an adjoining tract may as well be a monument as any other object. And the identity of a monument found upon the ground, with one referred to in the deed, is always a question for the jury.

If the monument found upon the ground, corresponds with that in the deed in some particulars, and differs from it, in others, the whole description in the deed is not to be rejected; and parol evidence is admissible to show whether such monument was the one intended.

Where the eastern boundary of the land conveyed, was a line "as surveyed by I. J. & I. B." if they had never made *any* survey, there was a latent ambiguity in the deed. If a dividing line had been made by another person, whether the parties referred to *his* survey, was a question of fact to be submitted to the jury.

Where the defendant alleges that he and those under whom he claims are in possession of land, claiming title, whether he has made improvements, is, in an action of *trespass*, an immaterial question.

Although the owner of land, while disseized, cannot maintain an action of trespass against the disseizor, he may, after re-entry, for trespasses subsequently committed.

If both parties are, in some sense, in possession, such mixed possession enures to the benefit of him who has the legal title.

The fact that the defendant has been in possession for six years, claiming title, and has cultivated the land and made improvements thereon, does not affect the plaintiff's right to maintain such action.

The owner of the land may, at any time within twenty years from the time of his disseizin, re-enter, so as to maintain an action for trespasses committed after his re-entry.

The time when he discovers that he has been disseized is immaterial, if it be not within twenty years, so that he may re-enter and purge the disseizin.

Exclusive occupation under *a mutual agreement* upon a boundary line, though it be erroneous, is such possession as is requisite to constitute disseizin.

Abbott *v.* Abbott.

EXCEPTIONS, by defendant, to the ruling at *Nisi Prius* of APPLETON, C. J.

This was an action of TRESPASS *quare clausum.* The land in controversy is the eastern half of lot No. 284, 12th range of lots in Etna. The lot was formerly owned by Samuel Abbott, who devised one half thereof to the plaintiff, and the other half to his wife and two sons, William and Leonard. Some time previous to date of his will, he .employed one Harvey to run a line through the lot. The said devisor died in September, 1831, a few days after the execution of his will.

The plaintiff, in 1836, sold, by warranty deed, the west half of the lot to one Stevens, who, in 1837, conveyed the same to the defendant. The description in the deed is, — "west half of lot No. 284, and one half of gore north of said lot, both containing fifty-five acres, being the same, more or less, as surveyed by Israel Johnson and Isaac Boynton, by order of Court of Sessions."

The plaintiff purchased the eastern half in 1851, and soon after discovered that it was not equally divided by the Harvey line.

From the bill of exceptions, it appears the plaintiff, as a witness in his own behalf, testified that, by direction of his father, and a short time prior to his death, which was in September, 1831, a line was run by one Harvey through, or partly through lot No. 284, in Etna, dividing it into the east and west parts. *That,* immediately after his father's death, by a mutual understanding between the devisees of the said lot, he entered and occupied and claimed the west part up to the Harvey line, supposing that his father had devised him the west half in severalty, and that the Harvey line was in the centre. And the other devisees of the lot, so supposing, enclosed, occupied and claimed the east part up to the Harvey line, and they all supposed the lot to be divided in severalty, and the line as run divided the lot in equal parts. *That,* in 1851, he purchased the east part, and, in 1853, he discovered the Harvey line was not run

through the centre of the lot. That his brother, the defendant, cut grass within the last six years, on the east part of said lot, according to the new line run since the commencement of this action, by the surveyor appointed by the Court, but on the west part according to the Harvey line. *That* the Harvey line was intended to be in the centre of the lot; that his brother, during the said six years, had cut the grass when he did not cut it, that sometimes he cut it.

The lot No. 284 was a wood lot, and there was no dividing fence between the east and west half until within about eleven years ago, when a clearing was first made. That no survey or line was ever made by Israel Johnson and Isaac Boynton, or any other person, by order of the Court of Sessions.

The defendant introduced testimony tending to show that the Harvey line had always been recognized by the owners of the two parcels, since his father's death. *That* there was no other survey of the lot, or line run, except by Harvey, who run a line through the lot, dividing it into the west and east half, a short time before the death of said Samuel Abbott, in September, 1831.

The defendant contended, that the land was intended to be conveyed according to the Harvey line, but, by mistake, was described as the survey made by Johnson and Boynton.

The presiding Judge ruled that, if Johnson and Boynton never made any survey or run any line, as stated in the deed, — and it was admitted they did not, — the words " as surveyed by Israel Johnson and Isaac Boynton, by order of the Court of Sessions," must be rejected, whatever the mistake or intention might be. That the words " by Israel Johnson and Isaac Boynton, by order of the Court of Sessions," could not be rejected and the word " surveyed" retained and applied to the Harvey line, even if no other survey was made, or line run, except by him. That the other descriptive words in the deed must be resorted to, alone, to ascertain what land was conveyed to the defendant, and the words " west half" would confine the defendant's land to the west half of the lot.

The defendant's counsel requested the Court to instruct the jury, that if, through an agreement, and occupation under an agreement, between the devisees and those claiming under them, for more than twenty years, according to the Harvey line, *that* was the dividing line between the east and west part of the lot, and would be binding on plaintiff. The presiding Judge did not instruct as thereby requested, but instructed as hereafter follows.

The defendant also contended, and offered evidence tending to show that he had been in open, notorious and exclusive possession of the west parcel of the lot, according to the Harvey line, for more than twenty years, and up to the date of the writ, and had, more than eleven years ago, cleared and cultivated a portion of the lot up to the Harvey line, clearing it and sowing it to grain, and laying it down to grass, and built some fence. And the presiding Judge instructed the jury that if the defendant had been in such possession for twenty years or more, it was a defence to the action, and the line would bind the parties. He further instructed the jury that, if the defendant had been in such possession more than six years before this suit was brought, and had so improved and cultivated the land, this action could not be maintained, unless before the alleged trespass the plaintiff had entered upon the land; and he observed the plaintiff testified that the *defendant* had cut the grass when *he* had not, though forbidden; and that sometimes *he* cut it. And if, after discovering that the line was not in the centre of the lot, the plaintiff, within six years from such discovery, entered upon the land, he might maintain an action for cutting the grass after *such* entry; and, if both were in possession, the law would adjudge the possession in the plaintiff, who had the legal title.

The case was elaborately argued by

*McCrillis*, in support of the exceptions, and by

*L. Barker* and *C. P. Stetson*, contra.

The opinion of the Court was drawn up by

DAVIS, J. — The land in controversy was in possession of the *plaintiff* from 1831 to 1836. It was supposed to be one half of the lot, which had previously been divided by his father, during his lifetime, one Harvey acting as surveyor, in running the dividing line. In 1836 the plaintiff sold it to John Stevens; and he conveyed it to the *defendant* in 1837. The plaintiff purchased the other half of the lot in 1851; and, in 1853, he discovered that the lot was not equally divided by his father. He thereupon claimed to set aside the Harvey line, as having been erroneously run; and, from that time until 1860, when this suit was commenced, there seems to have been a mixed possession of the strip in dispute, the grass having been cut upon it sometimes by the defendant, and sometimes by the plaintiff.

It is contended that the *defendant* and those under whom he claims were in the exclusive possession from 1831 to 1853, claiming title; and that the defendant made certain improvements by cultivation, and the erection of fences.

Some question seems to have been raised, whether, if the title is found not to have been in the defendant, he can recover compensation for the improvements made by him. But, as this is an action of *trespass*, the question is immaterial.

The defendant claimed title by *disseizin*. If he can establish such a claim, it must be on the ground that he was in possession from 1831, including the possession of those under whom he claims, to 1853. For, after that time, his possession was not *exclusive*.

While the owner of land is disseized, he cannot maintain an action of *trespass* against the disseizor. *Allen* v. *Thayer*, 17 Mass., 299; *Bigelow* v. *Jones*, 10 Pick., 161. But after reëntry, he can maintain such an action for *subsequent* trespasses. *Putney* v. *Dresser*, 2 Met., 583. And if *both* parties, as in the case at bar, can be considered in any sense in possession, such mixed possession enures to the benefit of the one having the *legal title*. *Leach* v. *Woods*, 14 Pick.,

461; *Slater* v. *Rawson*, 6 Met., 439. Therefore the right of the plaintiff to maintain this suit, depends upon the question, whether he had any right of entry in 1853.

The plaintiff claims by deeds from Leonard and Sarah Abbott, in which the land is bounded on the west "by land owned by Moses Abbott," the defendant. These deeds are therefore of no service in determining the locality of the dividing line.

In order to do this, by ascertaining what land was *owned* by Moses Abbott, the plaintiff, at the trial, resorted to his own deed to Stevens, and Stevens' deed to the defendant, given in 1836, and 1837. In these deeds Moses Abbott's land is described as "the west half of lot number two hundred eighty-four, as surveyed by Israel Johnson and Isaac Boynton, by order of the Court of Sessions."

The *plaintiff* then proved that Johnson and Boynton never made any survey of the dividing line; and that the Harvey line, which had been the divisional line of occupation, was erroneous, not being in the centre. And he claimed that, as there was never any such survey by the persons named in the deed, the *whole clause* should be rejected, and the line be established by a new survey, giving him *one half of the lot.*

The *defendant* introduced evidence showing that there was never *any* survey of the dividing line, except by Harvey. And he contended that the words "as surveyed" should not be rejected from the deed; and that the parties intended to convey the west half of the lot *as surveyed by Harvey,* but made a mistake in the description.

The Court ruled that the words "as surveyed" could not be retained, and the other words rejected; but that the whole clause must be rejected," whatever the intention or mistake might be;" and that "the other descriptive words in the deed must be resorted to alone, to ascertain what land was conveyed to the defendant."

When the plaintiff conveyed to Stevens, and Stevens to the defendant, they were in possession to the dividing line

as surveyed by Harvey. And the language employed, if applied to the dividing line, and not to the former survey of the whole lot, would seem to indicate an intention to convey a particular part, as *already divided*, and not an undetermined part, yet *to be divided*. And the *intention* of the parties, as apparent in the deed, should govern its construction, if possible. The deed clearly refers to a dividing line, previously surveyed. If the line thus intended by the parties *can be ascertained*, that must be conclusive.

*What* are the boundaries of land conveyed by a deed, is a question of *law*. *Where* the boundaries are, is a question of *fact*. An *existing line* of an adjoining tract may as well be a *monument* as any other object. And the *identity* of a monument found upon the ground with one referred to in the deed, is always a question *for the jury*. These propositions have been so often applied in real actions, that no citation of authorities is necessary to sustain them.

And, upon this question of *identity*, parol evidence is always admissible. *Waterman* v. *Johnson*, 13 Pick., 261; *Wing* v. *Burgis*, 13 Maine, 111. The acts and declarations of the grantor are important in determining it. *Patten* v. *Goldsborough*, 9 S. & R., 47. Subsequent occupation by the parties is generally decisive. *Stone* v. *Clark*, 1 Met., 378.

It sometimes happens that the monument found upon the ground corresponds with the description of the monument in the deed in some particulars, and differs from it in others. In such case, *the whole* description in the deed is not to be rejected; and parol evidence is admissible to show whether the monument partially but erroneously described was the one intended. *Parker* v. *Smith*, 17 Mass., 413; *Clark* v. *Munyan*, 22 Pick., 410; *Slater* v. *Rawson*, 1 Met., 450. "It is well settled," says DEWEY, J., in *Crafts* v. *Hibbard*, 4 Met., 438, "that parol evidence cannot be introduced to contradict or control the language of a deed; but it is equally well settled that latent ambiguities may be explained by such evidence. Facts existing at the time of the

deed, and prior thereto, may be proved by parol evidence, with the view of establishing a particular line as the one contemplated by the parties, when such line is left, by the terms of the deed, ambiguous and uncertain."

Thus, if the premises are bounded by land of A on the *north*, and A's land is on the *south*, it may be proved that it was intended as the *southern* boundary. *White* v. *Eagan*, 2 Bay, (S. C.,) 247. So, if bounded on "Broad river," it may be proved that "Catawba river" was intended. *Middleton* v. *Perry*, 2 Bay, 539. Both these cases are cited with approbation in *Linscott* v. *Fernald*, 5 Greenl., 496. And the cases previously cited from Massachusetts are to the same effect.

The line, "as surveyed by Israel Johnson and Isaac Boynton," was the eastern boundary of the land conveyed. If Johnson and Boynton never made *any* survey, there was a latent ambiguity in the deed. If it should appear that they surveyed the whole lot, on some former occasion, then the words "as surveyed" would be applied to the whole, and would not affect the dividing line, but would leave it to be determined by subsequent occupation. But, if they never made *any* survey, then the words "as surveyed" might appropriately be applied to the dividing line; and, if that line was never surveyed by any one except Harvey, whether the parties to the deed must have referred to *his* survey was not a question of *law*. Because the existing line, as a monument, was, in part, erroneously described, it was not for *the Court* to say that no monument existed to which the description was intended to apply. The question was one of *fact*, which should have been submitted to the jury.

Upon the question of disseizin for twenty years or more, claimed by the defendant, from 1831 to 1853, the evidence is not fully reported. The jury were correctly instructed that such a disseizin would be a defence to the action.

The jury were instructed that, if the defendant had been in possession six years, "and had improved and cultivated the land, this action could not be maintained, unless, before

Abbott *v.* Abbott.

the alleged trespass, the plaintiff had entered upon the land ;" but, if the plaintiff, "within six years from the discovery that the line was not in the centre of the lot, entered upon the land, he might maintain an action for cutting the grass after such entry."

If the plaintiff was the owner of the land, and had been disseized less than twenty years, he might, after reëntry, maintain an action for *subsequent* trespasses. In such case, it is not easy to perceive how the defendant's rights in this action could be enlarged by his having "improved and cultivated the land," before such reëntry. And the plaintiff's *right* of reëntry could not extend "six years from his *discovery* that the line was not in the centre of the lot," if before such reëntry he had been disseized for twenty years. Nor could he acquire any rights by reëntry after the twenty years had expired. *School District* v. *Benson*, 31 Maine, 381. If he was disseized, the time when he *discovered* it was immaterial; as it was immaterial whether he had discovered it at all, if not in season to reënter and purge the disseizin. *Poignard* v. *Smith*, 6 Pick., 172.

The defendant requested the Court to instruct the jury, "that if, through an *agreement*, and *occupation under an agreement*, between the devisees, and those claiming under them, for more than twenty years, according to the Harvey line, *that* was the dividing line between the east and west part of the lot, it would be binding on the *plaintiff*."

If such *agreement* and *occupation* made the line binding, either by *disseizin*, or by way of *estoppel*, the requested instruction should have been given.

The question is not, whether it would have been binding upon *both* of the adjoining owners. If one who is in open, visible occupation, to a known and agreed boundary, sells to a stranger, and afterwards himself purchases the adjoining lot, *he* may be estopped, as against such stranger, from denying the correctness of such boundary, though his *grantor* of the adjoining lot would not have been. See *Merriwether* v. *Larmon*, 3 Sneed, (Tenn.,) 345.

But if such occupation was a *disseizin*, it was binding on *all* the parties, after continuing twenty years or more.

Mere occupation, by inadvertence, or mistake, without any *intention to claim title*, may not be a disseizin; as where a fence is erroneously erected not on the dividing line. *Lincoln v. Edgecomb*, 31 Maine, 345; *Brown v. Gay*, 3 Greenl., 126. But if, in such case, there is an *intention to claim title* to the land occupied, though the line is fixed by mistake, it is a disseizin. *Otis v. Moulton*, 20 Maine, 205. In the case of *French v. Pearce*, 8 Conn., 439, in an elaborate opinion by HOSMER, C. J., it was held, that actual occupation, under claim of ownership, though resulting from a misapprehension of the place of the dividing line, was a disseizin, sufficient, if continued, to establish a title in the possessor. That case was sustained, and quoted with approval, in *Spaulding v. Warren*, 25 Vt., 316. The authorities upon this question are collected in 1 Greenl. Cruise, 53, note.

The *intention* which is necessary to constitute a disseizin is an *intention to claim title*. Such intention is not presumed on the part of a tenant, against his landlord. It is presumed, even beyond the extent of occupation, if it is under a recorded deed. An intention to commit a *wrong*, against the lawful owner, implying a *knowledge* that the disseizor has no *right*, is never necessary. In nearly all the reported cases of disseizin, the disseizor appears to have occupied, if without legal right, by mistake, either of law, or fact. And if the mistake is of the boundary line, it does not vary the result. *Melvin v. Prop. of Locks, &c.*, 5 Met., 15.

But if this were otherwise, there can be no doubt that exclusive occupation, under a *mutual agreement* upon a boundary line, though it be erroneous, is such possession as is requisite to constitute a disseizin.

In some of the states, such an agreement is held to be binding and conclusive *at once*, on the ground of estoppel. *Carlton v. Redington*, 1 Foster, 291; *Kip v. Norton*, 12 Wend., 127; *Lindsay v. Springer*, 4 Har. (Del.) 547;

*Orr* v. *Foote*, 10 B. Monroe, 387; *Dudley* v. *Elkins*, 39 N. H., 78.

This doctrine is questioned in other States. But it seems to be everywhere conceded that exclusive possession, under such an agreement, twenty years, or *long enough to bar an entry*, will establish a title in the possessor, by disseizin, if not by estoppel. *Boyd* v. *Graves*, 4 Wheat., 513; *Smith* v. *McAllister*, 14 Barb., 434; *Wilson* v. *Gibbs*, 28 Penn., 149; *Clark* v. *Tabor*, 28 Vt., 222; *Holton* v. *Whitney*, 30 Vt., 405. Such was declared to be the law by Judge STORY, in *Wakefield* v. *Ross*, 5 Mason, 16. And the same doctrine was sustained, upon full consideration, in an opinion by WILDE, J., in *B. & W. Railroad Co.*, v. *Sparhawk*, 5 Met., 469.

Whether the devisees, of whom the plaintiff was one, made such an agreement, and occupied according to it for twenty years or more, was for the jury to determine, upon the evidence in the case. The question should have been submitted to them, with the instruction requested by the defendant. *Exceptions sustained.—New trial granted.*

APPLETON, C. J., KENT, WALTON and BARROWS, JJ., concurred.

DICKERSON, J., concurred in the result.