CITY OF ST. LOUIS, Respondent, *v.* CASPER H. MEYER, Appellant.

13a 367
31a 158
13  367
f82 168

### March 13, 1883.

1. EJECTMENT — BOUNDARIES. — What are the boundaries of land conveyed by deed is a question of law; where the boundaries are is a question of fact.

2. —— It is error to instruct a jury to disregard surveys properly in evidence in determining the position of boundary lines mentioned in the deed in suit.

3. —— That partitioners place certain stones which mark boundary lines upon land adjoining their own, does not have the effect of changing the boundary lines.

4. —— EVIDENCE. — Under a claim that a certain street marks a boundary line, it is error to admit in evidence proceedings to open such street, the judgment in which had been vacated for want of jurisdiction.

5. —— PRACTICE. — The circuit court may entertain a motion to vacate a judgment in a street opening proceeding, filed more than four days after the judgment, and may sustain the motion at the subsequent term.

6. —— EVIDENCE. — A deed made by one of the parties twelve years before the deed in suit was made, is incompetent to show that the former deed was made under the survey adopted in the latter deed.

APPEAL from the St. Louis Circuit Court, HORNER, J.
*Reversed and remanded.*

F. A. Wislizenus and Kehr & Tittmann, for the appellant: From its own construction of the deeds in evidence it was the duty of the court to declare, as a matter of law, what the boundaries of the Baccanné tract were : — *Whittelsey* v. *Kellogg*, 28 Mo. 407 ; *Doe* v. *Paine*, 4 Hawks, 64 ; *Magee* v. *Hallett*, 22 Ala. 699 ; *Burnett* v. *Thompson*, 13 Ired. 379. The original surveys by which the government sold its land and conveyed it to purchasers, establish the rights of the parties as to the boundaries ; no line which will vary the rights thus acquired can afterwards be established. — *May* v. *Haskins*, 12 Smed. & M. 428 ; *McGill* v. *Somers*, 15 Mo. 80 ; *Climer* v. *Wallace*, 28 Mo. 556. The United States surveys conclusively settle the locality of the tracts confirmed, and neither court of law nor equity can locate the tract elsewhere. — *Maguire* v. *Tyler*, 25 Mo. 484 ; *s. c.* 30 Mo. 202. The jury were not informed by the court what the true boundary line was, nor were they required to ascertain whether or not the stones had been set on the true line — and yet the true northern line must govern. — *Manter* v. *Picot*, 33 Mo. 490. Again, " an existing line of an adjoining survey may as well be a monument as any other object." — *Abbott* v. *Abbott*, 51 Me. 581. Defendant claimed that the stones on the north line, if there were any, had been erroneously set. To determine whether this was so or not, the stones, the monuments on the south line, and the call for distances had to be considered. — *Doe* v. *Paine*, 4 Hawks, 64. " When in a deed made either by the government or an individual, calls are made for a certain boundary, the tract must have that boundary although it does not correspond with the established corners and monuments." — *Shelton* v. *Maupin*, 16 Mo. 124.

Leverett Bell and Frank K. Ryan, for the respondent: That the defendant is estopped to deny the location of Victor Street, according to ordinance 6594. — See *The*

*State* v. *Corrogan*, 36 N. J. L. 52 ; *Matter of Wall Street*, 17 Barb. 316 ; *Marsh* v. *Battinion*, 5 Md. 314. Said proceedings had the effect to settle the boundaries of Victor Street in question, because there was no motion for a new trial in time, and the setting aside of the judgment was after the term, and when the matter was no longer in the breast of the court. — See *The State* v. *First National Bank*, 4 Nev. 359 ; *Killip* v. *Empire Mill Co.*, 2 Nev. 34. Monuments placed on the ground, prevail over experimental surveys subsequently made. — *Campbell* v. *Clark*, 8 Mo. 553 ; *Whittelsey* v. *Kellogg*, 28 Mo. 406 ; *O'Neill* v. *City of St. Louis*, 8 Mo. App. 416. · The defendant excepted to the introduction of certain deeds and petition of Primm *et al.*, in evidence. They were all undoubtedly competent : as declarations as to boundary of deceased persons owning adjoining lands, as declarations of adjoining owners, as to the manner in which they held their lands as to this boundary, and as testimony of the inhabitants of a municipality to the location of one of its streets. — Greenl. on Ev., sects. 108, 109, 110, 120 ; see *Morley* v. *Davis*, 7 Price, 162 ; *Daggett* v. *Shaw*, 5 Metc. 223. Brown's survey of the DeVolsey claim and Brown's survey of the Barsaloux claim being surveys of claims inferior to and in conflict with the city's title to the Commons, only established lines which did not have·the force and effect of boundary lines to the land in question, unless adopted by the parties having title thereto. — *Gibson* v. *Chouteau*, 39 Mo. 536 ; *McGill* v. *Somers*, 15 Mo. 80.

BAKEWELL, J., delivered the opinion of the court.

This is ejectment for a piece of ground in the city of St. Louis, described in the petition as " beginning at the northwest corner of the Baccanné tract of two by forty arpens in the Little Prairie of St. Louis, as represented on a plat of the survey and subdivision of the St. Louis Commons, as

made by Charles DeWard, under authority of the city of St. Louis, and approved by the mayor, March 30, 1839, and duly recorded in plat book 3, page 24, which point is five feet five and three-eighth inches south of the southern line of Shenandoah Street as now located by the city authorities ; thence, with the northern line of said Baccanné tract, as so surveyed by the said DeWard, eastwardly one thousand and eighty-eight feet, more or less, to a point in the western line of California Avenue, sixty feet wide, distant two hundred and eleven feet three and one-fourth inches southwardly from said Shenandoah Street, measured along the western line of said California Avenue ; thence southwardly, with the western line of said California Avenue, thirty feet six and one-half inches to a point in the northern line of the subdivision of the Baccanné tract, which is coincident with the southern line of Victor Street, as the same is located and dedicated to the eastward of said California Avenue, and which point is distant two hundred and forty-one feet nine and three-fourth inches southward from said Shenandoah Street ; thence westwardly, with a line parallel to and thirty feet distant from said northern line of said Baccanné tract, one thousand one hundred and one feet two inches, more or less, to an old stone in the western boundary line of the said Little Prairie Fields, which stone is thirty-seven feet nine and five-eighth inches southward from Shenandoah Street, measured along the western line of said fields ; thence with the said western boundary line of the said Little Prairie Fields, thirty-two feet four and one-fourth inches to the place of beginning."

The answer was a general denial. There was a verdict for plaintiff, and judgment accordingly.

Defendant, as tenant of DeMenil, Priest, and Pitzman, is in possession, under fence, of a piece of ground nearly triangular, bounded east by California Avenue, north by Shenandoah Street, south by what the plaintiff calls the

south line of Victor Street, running west between the two last-named lines to DeWard's west line of the Little Prairie. The western boundary of the tract is only a few feet long.

It is claimed by the plaintiff that the southern thirty feet of this tract, along what would be its hypothenuse if it could be exactly called triangular, from California Avenue to the west line of the Little Prairie, is the southern thirty feet of Victor Street as established by city ordinance 6594. Plaintiff does not claim, however, under any proceedings for opening the street, but under a dedication which will be spoken of hereafter. Pitzman, for defendant, says that the southern thirty feet of the tract are the southern thirty feet of Victor Street, as described in the ordinance. But he says that that ordinance provided for a new street over ground not dedicated.

The question is, whether the tract in controversy, which is a strip of thirty feet wide running parallel with Sidney Street from California Avenue west, for a mean distance of about eleven hundred feet, is, or is not, the northern thirty feet of the Baccanné tract. Appellant contends that the northern thirty feet of the Baccanné tract lie south of his possession; the city claims that the northern thirty feet of the Baccanné tract are within the defendant's fence and constitute the southern thirty feet of this triangular tract.

United States Survey 3125, made by Brown, which is the St. Louis Commons, and also DeWard's survey, set out in the petition, were put in evidence, as also the acts of congress of 1812, 1824, and 1831, under which the city derives title. The tract in controversy is in that part of the Commons where there were conflicting claims. Three of these claims, being concessions under the old governments confirmed by the United States, lie side by side. The Baccanné tract was a concession of two by forty arpens. This

tract was bounded on the south by the Barsaloux tract
and on the north by the DeVolsey tract. The DeVolsey
tract was United States Survey 3077 and the Barsaloux
tract was United States Survey 3121. Both of these tracts
were surveyed by Brown, the deputy surveyor of the
United States. All three of the tracts were surveyed by
DeWard. The testimony of Cozzens is that DeWard
conformed to the United States surveys down to the
southern line of Mde. Chouteau's claim, which is the
northern line of the DeVolsey claim, but south of that he
did not conform to the United States surveys. He did
not give to the DeVolsey survey the width of six arpens
called for by the grant, but made it sixty feet short in
width.

So far as the dates of the respective surveys go, the tes-
timony is not very clear. It is assumed in questions put to
Mr. Cozzens, the surveyor, the main witness for plaintiff,
that DeWard's survey was subsequent to those of Brown.
Brown's survey of the DeVolsey tract appears from the
date to his notes to have been made on January 24, 1837 ;
and his survey of the Barsaloux tract is dated November
14, 1837. Witnesses speak of DeWard's survey as being
made in 1836 and 1837. The certificate of DeWard on the
plat in evidence is dated November 27, 1838. But the sur-
vey was evidently completed before that date, and is re-
ferred to in the deed of the city to Baldwin and Bowlin,
dated April, 1837. In one place Cozzens speaks of Brown
not having yet executed the survey of the other claim.
But the date he there seems to refer to is the date of the
Chouteau survey. We gather from the whole testimony
that the surveys of Brown of the DeVolsey and Barsaloux
concessions were about contemporaneous with the surveys of
the Barsaloux, Baccanné, and DeVolsey surveys by De-
Ward. There seems to be nothing in the record from
which it can be determined with any certainty that the

Brown surveys were prior in time to those of DeWard as city surveyor. However, all the witnesses who speak to the question are agreed, that if the lines of the United States surveys are taken in determining the location of the Baccanné tract, the property claimed by plaintiff is not the northern thirty feet of the Baccanné tract. The positions of the Barsaloux and DeVolsey claims fix that of the Baccanné tract, which lies between and is bounded by them. If the Baccanné tract is made to conform to Brown's survey of the Barsaloux and DeVolsey tracts, it is moved at least thirty feet south of DeWard's line, and south and outside of defendant's fence.

Baccanné, in 1830, conveyed all his interest in the tract that bears his name, to Baldwin and Bowlin, describing it as bounded north by lands granted in 1767 to DeVolsey, and south by lands granted in 1768 to Barsaloux.

In March, 1837, the city entered into a compromise with the claimants of the Barsaloux, Baccanné, and DeVolsey tracts. The deeds executed in pursuance of this compromise were not, however, immediately executed. That for the Barsaloux tract to Daggett and others was not executed until 1839. The United States survey for that tract was not completed before November 14, 1837, and there seems to have been a conflict amongst claimants to that tract, which, perhaps, caused delay in the execution of the deed. The city, which claimed the entire tract within the boundaries of the City Commons, in carrying out this compromise, gave quit-claim deeds to the claimants.

The deed of the city to Baldwin and Bowlin, claimants of the Baccanné tract, is dated April 1, 1837, and describes the property as follows: "All that tract of land lying within the survey which has been made of the St. Louis Commons by Charles DeWard, which said tract is com-

monly known by the name of Baccanné tract, and is bounded on the north by the DeVolsey tract released to John B. Cabanné by the corporation of the city of St. Louis, south by the Barsaloux tract released to John D. Daggett, David B. Hill, John Corcoran, and James C. Lynch, east by the eastern base line of the Commons aforesaid, and west by the west line of the forty arpen lots of the Little Prairie. The said Baccanné claim in its entire extent containing two arpens front by forty arpens in depth, equal to eighty arpens in superficies. And that portion of said Baccanné claim hereby released, which lies within the survey of said Commons, containing, after deducting the avenue, lanes, and alleys which intersect it, fifty-seven and forty-eight one-hundredth acres, running in an east and west direction through blocks 30, 31, 32, 33, 34, 35, 36, 37 of the survey of said Commons, all of which will more fully appear by reference to said survey." The deed states that it is " a compromise deed " to avoid law suits and difficulties, and that the parties of the second part, possessing a title to the premises conflicting with that of the city, the city, by virtue of the act of March, 1835, authorizing sale of the Commons, and in obedience to a resolution of the board of aldermen, passed March 29, 1837, executes the deed, and the parties of the second part covenant that they and their legal representatives " will well and truly observe the survey of the St. Louis Commons made by De-Ward, west of the eastern line of the principal avenue, in this, that they will never obstruct, close, or in any manner stop up the said principal avenue, or any other lane, road, or avenue established by the corporation of St. Louis, and passing through the tract of land by this deed conveyed west of the said principal avenue."

The quit-claim deed of the city to Cabanné for the De-Volsey tract is dated October 21, 1837, describes the property conveyed as " all that certain farm or piece of land

situated in the county of St. Louis, between the city of St. Louis and the village of Carondelet south of St. Louis, it being a tract which was conceded to Pierre Francois De-Volsey by St. Ange, the French commandant at St. Louis, between the years 1764 and 1769, by the said DeVolsey willed to Francois DeVolsey, and by him deeded to Cabanné, containing two hundred and forty arpens, excepting and reserving such fractions of blocks in said tract as the same are found and delineated on the plat of the St. Louis Commons made in 1836 or 1837 by Charles DeWard, as are herein mentioned, to wit," etc.

The quit-claim deed of the city to Daggett, Hill, Corcoran, and Lynch, is dated May 31, 1839, sets forth that the parties of the second part convey to the city " the western end of that portion of the Barsaloux tract of land lying within the St. Louis Commons, represented by that part of a plat and survey made and reported to the city authorities by DeWard, city surveyor, February 28, 1839, which agrees with the location and survey made by the surveyor-general of the United States, which said plat and survey, showing the quantity of ground hereby conveyed to be thirty-one and ninety-two one-hundredth acres, is hereunto annexed and made part of this deed." In consideration of this conveyance, the city conveys to the parties of the second part all its interest in that part of the Barsaloux tract lying between the eastern line of the Commons and the eastern line of the tract last above mentioned, as " represented on the plat and survey above referred to and hereunto annexed, and agreeing with that part of it located and surveyed by authority of the surveyor-general of the United States."

A reference to this plat shows the western end of the Barsaloux tract conveyed to the city. The northern line of the parallelogram containing the thirty-one and ninety-two one-hundredth acres is marked by a thick black line, which is indicated as " the United States location." North of this

line, and parallel to it, at a distance of eighty-four links, or fifty-five feet five and one-fourth inches, is a dotted line marked, " City location in the survey of the Commons." Inside the parallelogram is written, " Compromise of the city of St. Louis with the legal representatives of the Nicholas Barsaloux claim of four by forty arpens agreeably to the thick black line."

Bowlin and Baldwin having title to the Baccannè tract bounded north by the DeVolsey tract and south by the Barsaloux tract, made conveyances, in virtue of which and of *mesne* conveyances, Baldwin, Bowlin, Primm, and Morton became tenants in common of the Baccanné tract. These latter made partition amongst themselves by deed dated December 10, 1839. The deed and plat attached was duly recorded. By this deed and plat a strip thirty feet wide along the northern line of the Baccanné tract, and bounded on the north by the southern line of the DeVolsey tract, is dedicated for a public highway. The deed recites that the parties hold as tenants in common, " a parcel of land in the county of St. Louis, being all that part of the two by forty arpen tract known as the Baccanné tract which lies west of the east front of the St. Louis Commons, bounded east by said front line, north by a tract claimed by Cabanné under DeVolsey, south by a tract claimed by Lynch and others under Barsaloux, and west by the St. Louis Commons; and whereas, after throwing off the entire north line of said tract west of said front line, thirty feet, and along the entire south line of said tract west of said front line twenty feet, to be, and remain forever, on both sides of said tract, as a public highway forever," etc.

The city introduced in evidence ordinance 6594, approved July 3, 1868, to open Victor, Sidney, and Lynch Streets. This ordinance provides that the centre line of Victor Street is to pass thirty feet north of the stone set for the northwest corner of the subdivision of the Baccanné tract. The

city also introduced street opening proceedings begun under this ordinance. The city does not claim title by virtue of this ordinance or of these street opening proceedings. And this testimony was admitted against defendant's objection, but together with the record of an ejectment suit afterwards brought against defendant and those under whom he claims, by the city, for land including that in controversy, it was claimed to be competent for the purpose of showing that the defendants in that ejectment admitted that the northern thirty feet of the Baccanné tract were dedicated by the owners "as a street now called Victor or DeVolsey Street, and that defendants have no right of seisin therein." Plaintiff contends that this testimony tended to show that the land sought to be condemned was the north and not the south half of the street, and that defendants in their disclaimer meant the Victor Street of the ordinance and pro ceedings.

Mr. Cozzens testified for plaintiff that he assisted De-Ward in his survey of the Commons, and in his subsequent subdivision of the Commons into blocks. DeWard died in 1841. The ground in controversy was the southern half of Victor Street described in section one of ordinance 6594. The witness stated that there is a stone at the northwest corner of the subdivision of the Baccanné tract in partition which is at the intersection of the southern line of Victor Street with the western line of the Little Prairie Common Fields. It was put there in place of one fixed by DeWard. The north line of the Baccanné subdivision is thirty feet south of and parallel with the northern line of the Baccanné tract. DeWard fixed the corner of the subdivision and the corner of the tract. Witness helped him to plant the stones. In DeWard's survey of the Commons he placed stones in the northern line of the Baccanné tract at the intersection of every block from Seventh Street west. The witness was permitted to testify, against the objection of defendant,

that all the additions west from Seventh Street conformed to DeWard's location of the Baccanné tract, and that Victor Street was opened in accordance therewith; that all deeds go by DeWard's survey, and everything round there is located by DeWard's plat; that six hundred houses have been built by that line, and that the location of the line claimed by the defence would make a "jog," and throw Victor Street east of California Avenue thirty feet out of line.

Pitzman, for defendant, testified that ordinance 6594 was drafted by himself and the then city engineer; that it was the intention to open a new street, not the street dedicated in the Baccanné partition, and that the stones set by him as assistant city engineer were set in conformity with this proposed new street. Examined upon the maps of Cozzens and Multon, formerly city engineer, Pitzman corrobrated many deductions of Cozzens drawn from these maps, but testified that the Baccanné tract surveyed by Mr. Cozzens, who says he followed DeWard, has, by actual measurement, four hundred and twenty-three feet in width, whereas the call for two arpens should give it a width of only three hundred and eighty-five feet.

In his examination, Mr. Cozzens is interrogated about a stone at the northeast corner of the Baccanné subdivision. The plat of the subdivision attached to the partition deed marks no stone there, nor any along the south side of the subdivision; stones are marked at frequent intervals along Sidney Street to the south, from the east to the west line of the Commons.

The court gave the following instructions at the instance of plaintiff: —

"If the jury find from the evidence that in the subdivision of the Baccanné tract by Baldwin, Primm, Bowlin, and Morton, stones were set to mark the northwest corner the northern boundary of the lots in said subdivision, and

that the south line of the land in controversy in this case is the same as the line indicated by said stones, then the jury will find for the plaintiff for possession of the property sued for, although the jury further find from the evidence that other surveys, or the plats of other surveys, or the plat of said subdivision, do not agree with said line.

"The court instructs the jury, that in this case the plaintiff claims title to a strip of ground (described in the petition) thirty feet wide between California Avenue and the west line of the St. Louis Commons, the north line of which agrees and is coincident with a direct lineal continuation of the centre line of Victor Street, as said street has been heretofore established by the city of St. Louis between Jefferson Avenue and California Avenue, proceeding westwardly to said west line of said Commons ; and if the jury find from the evidence that said strip of ground is the same and identical with the thirty feet of ground set apart as a public highway from off the north side of the Baccanné tract between said California Avenue and said west line of said Commons in the subdivision of the Baccanné tract by Baldwin, Primm, Bowlin, and Morton, and that said ground is also the same and identical with the south half of Victor Street between said California Avenue and said west line of said Commons, as said Victor Street has been established by ordinance No. 6594 of the city of St. Louis, then the jury will find for the plaintiff."

The following instructions were given at the instance of defendant : —

"The jury are instructed that the plat made by Charles DeWard, recorded in plat book 3, page 24, offered in evidence by plaintiff, is admitted in evidence only as declarations of a deceased surveyor as to the boundaries and location of the respective tracts therein contained and laid down, and is of no more force and effect than the actual testimony of DeWard before this jury would be, if living.

"The court instructs the jury, that the burden of proof is on the plaintiff to show that the defendant is in possession of the northern thirty feet of the Baccanné tract, and that if the jury believe from the evidence that defendant is not in possession of the northern thirty feet of the Baccanné tract, the plaintiff cannot recover in this action.

"The jury are instructed that under the constitution of this state, private property cannot be taken for public use without just compensation. Therefore the jury are instructed that the plaintiff acquired no title and no right of possession to the property in dispute, under and by virtue of the ordinance No. 6594, read in evidence by the plaintiff, and of the subsequent proceedings had thereunder, in the case of the *City of St. Louis* v. *John G. Priest et al.*, being the proceedings of the St. Louis Circuit Court for the opening of Victor Street, also read in evidence by the plaintiff, unless the plaintiff has also shown that within six months after the report of the appraisers in said case, together with a certified copy of the action of the circuit court approving the same, was delivered to the city council, said city council made an appropriation for the payment out of the city treasury of all damages assessed by said appraisers in favor of the owners of property appropriated in said proceeding for the opening of Victor Street, and the court further instructs the jury that there is no evidence before the jury to show such fact."

The following instructions asked by defendant were refused: —

"The court instructs the jury, that the plaintiff, under the deeds offered in evidence by plaintiff, has shown itself entitled to the possession of no part of the Baccanné tract except the southern twenty and the northern thirty feet thereof, as laid down on the plat of the subdivision of the

Baccanné tract attached to the partition thereof, dated December 10, 1839, between John H. Baldwin, Wilson Primm, George Morton, and James B. Bowlin; that the city of St. Louis, claiming said thirty feet under the dedication made to it in said partition proceedings, cannot deny and is estopped from denying the location of said thirty feet as laid down on said plat.

" The court instructs the jury, that under the evidence in this case the plaintiff is not entitled to recover."

There was a verdict and judgment for plaintiff.

It appears from the evidence and admissions in the case, that the city of St. Louis has a title from the United States Government to a large tract of land called the St. Louis Common Fields, which is United States Survey 3126. Within the lines of this larger survey are several concessions lying side by side, called the Little Prairie Common Fields. Of these, the Baccanné tract of _____ by _____ arpens, was bounded on the north by the DeVolsey tract of two by forty arpens, and on the south by the Barsaloux tract of _____ by _____ arpens. A compromise was made by the city in 1837 with the legal representatives of Baccanné, DeVolsey, and Barsaloux, in accordance with which the city conveyed to them all its interest in these concessions. Deeds were executed to carry out this agreement. At the time these deeds were executed, surveys had been made about the same time by the Deputy United States Surveyor Brown and by DeWard, the city surveyor. These surveys did not agree. The deed for the Barsaloux tract was not executed to his legal representatives till May 31, 1839. That deed professes to convey according to the lines fixed by the United States. The other two deeds were made in 1837; and, though they refer to the city survey of DeWard for the purpose of covenants in regard to streets in that survey, nothing is said in the deeds as to which survey is taken by the grantor and grantees as the correct location of the tract conveyed.

What was meant by the Baccanné, DeVolsey, and Barsaloux tracts in these deeds? If the city released, and the Baccanné representatives dedicated, by the lines of the United States survey, then it appears that plaintiff is not entitled to recover. But, if the city released and the Baccanné representatives dedicated according to the lines of these tracts as laid down in DeWard's survey of the Commons, then plaintiff is clearly entitled to recover the land sued for in this action.

What are the boundaries of land conveyed by a deed is a question of law. Where the boundaries are, is a question of fact. The boundaries of the Baccanné tract were the DeVolsey tract and the Barsaloux tract. If the Barsaloux tract was conveyed according to the lines of the United States survey, and it so appears by the deed and by the plat referred to in the deed, the lines of that tract as fixed by the survey may as well be a monument as any other. *Abbott* v. *Abbott*, 51 Me. 581.

The testimony of Cozzens, the surveyor, who is the main witness for plaintiff, is, that Brown's survey brings the DeVolsey claim some fifty or sixty feet on to the Baccanné claim as surveyed by DeWard; and that, in surveying the Barsaloux tract, Brown brought it down south of Baccanné, leaving a gap between the United States survey of the Barsaloux tract and the line of Baccanné by DeWard of fifty-five feet eight and one-half inches. The Baccanné tract is confessedly bounded on the north by the DeVolsey tract, and the city, in its deed of April, 1837, to Baldwin and Bowlin, bounds the Baccanné tract on the south by the Barsaloux tract released to Daggett and others. When the deed to Daggett and others is made under the compromise (which was not until 1839), this tract is conveyed according to the lines of the United States survey. If this, then, is to be taken as a fixed line, and the quantities are given and the descriptions in the deeds followed, it seems that the

land claimed by the city in this action is not the northern thirty feet of the Baccanné tract. But if it is not the northern thirty feet of the Baccanné tract, as the city claims only under a dedication for a street of this northern thirty feet by the representatives of Baccanné, then the city is not entitled to recover.

We think that the first instruction given for plaintiff was erroneous in telling the jury to disregard the surveys. If the surveyor who made the survey for the partition of the Baccanné tract,— in which partition the northern thirty feet of the tract were dedicated for a street, — placed stones to mark the southern line of that street, and placed them upon the DeVolsey tract to the north, we do not see how that can affect defendants who are not parties or privies to that survey, and who claim that the strip which the city seeks to recover in this action is no part of the Baccanné tract, but lies entirely in the DeVolsey tract which adjoins the Baccanné tract on the north. Nor does it appear how the partitioners, by placing stones or otherwise, could dedicate any part of an adjoining tract in which they had no interest. This partition was made after the city had conveyed to the representatives of Barsaloux, Baccanné, and DeVolsey, and the conveyance by the city could not have been made with any view to any such stones as determining the boundary line of these tracts.

The trial court admitted in evidence the petition in certain proceedings in partition amongst the owners of the Baccanné tract. The petition is sworn to on October 11, 1839, which was two years and a half after the dates of the deeds of the city to the DeVolsey and Baccanné tracts, and six months after the deed to the Barsaloux tract. It is not pretended that this action was prosecuted to judgment, or that any further proceedings were had in it. The partition was afterwards effected by deed of December 10, 1839. It is claimed by respondent that this petition was in a case

that was dismissed, makes it clear that DeWard's survey was followed in the partition that was actually made six months afterwards. But we do not see that this petition shows a repudiation of Brown's survey or an adoption of DeWard's, so far as the Little Prairie goes. The petition says, that the land lies within DeWard's survey of the Commons (and it is undisputed that it does lie within that survey), and that it is bounded south by the Barsaloux tract released to Daggett and others (the line of the Barsaloux tract seems to be fixed according to Brown's survey, as we have seen, by the deed here referred to), east by the eastern line of the Commons, and west by the west line of the forty arpen lots of the Little Prairie ; and that the tract contains, after deducting avenues, lanes, and alleys which intersect it, fifty-seven and forty-eight one-hundredth acres, more or less, running east and west through blocks 30, 31, 32, 33, 34, 35, and 36 of the survey of the Commons, as will more fully appear by reference to said (DeWard's) survey.

The survey of DeWard divides the Commons into large rectangular blocks of about thirty-seven acres each, laying down, in the central part of the survey, principal streets intersecting at right angles at distances of about one thousand feet. The Little Prairie Fields are marked on this survey as lying side by side, and the lines of these conflicting surveys cut obliquely across these streets. Neither Victor Street nor Sidney Street is marked in this survey, nor are there any streets to correspond with them. Nor is any name given to any street running east and west. But a street marked as running west through the entire survey from Carondelet Avenue to the Prairie des Noyer Common Fields is evidently what is now known as Shenandoah Street, spoken of in the petition. The Baccanné survey is marked as running through block 30, and its northwest corner is placed at a point in Shenandoah

Street which, so far as can be made out on so small a plat, seems to be the point indicated by a mark in the plat used in the street openings under ordinance 6594, as representing the stone which Mr. Cozzens says was placed by DeWard as the northwest corner of the Baccanné tract. All this will appear more clearly by the following tracing : —

We do not see why the description in the partition suit is not as well applicable to the Baccanné tract as surveyed by Brown as to the tract as surveyed by DeWard.    Either survey must run through the Common Fields blocks named, and answers the description.        *

We are unable to see how the proceedings by the city to open Victor Street under ordinance 6594 were competent. These proceedings were prosecuted until a condemnation was obtained.    More than four days after this judgment was obtained in the circuit court, but within the term, motion was made to set aside the order approving the appraiser's report, and to vacate the judgment, as void for want of jurisdiction.    The circuit court at special term, certified to general term the question whether this motion, filed out of time, might be entertained.    General term decided that special term might entertain the motion, whereupon it was sustained, and the judgment set aside.    We have no doubt that the circuit court had power to vacate the proceedings on motion ; and the proceedings were vacated.    Nevertheless the record in that case was admitted, showing proceedings up to and inclusive of the judgment, and the defendant was not permitted to show that the proceedings were vacated.

The admission of these proceedings let into the case Moulton's map and a great deal of oral testimony as to the lines on that map, which, it seems to us, served no purpose except to confuse the jury.

We are also of opinion that it was not competent to show against defendant's objection, that the city, in 1849, conveyed to Verdin the northern part of the Barsaloux tract according to DeWard's survey.    This let in other testimony as to Verdin's line.    Yet, when defendant offered to show that, in 1839, DeWard, in surveying the Barsaloux tract, made a plat placing it thirty feet further south than he had placed it in his survey of the Commons, this was excluded.    All this testimony was, we think, equally in-

competent. The deed of the city to Verdin, made twelve years after the compromise with the claimants in the Little Prairie, had no tendency to show that the compromise of 1837, and the deeds executed in accordance with it, were made on the basis of DeWard's survey of the conflicting claims.

The testimony that the lines of Brown's survey would make a "jog" in Victor Street, which would otherwise be straight, and that persons had built upon the line of the proposed Victor Street on the theory that the north line of the Baccanné survey as fixed by DeWard would be the centre of Victor Street, was also incompetent. If the city had not condemned the land in controversy and had not acquired it by grant or dedication, it cannot make title by showing that the land is necessary to make a straight street answering to the description in an ordinance on the faith of which persons not in privity with defendants have fixed the lines of their lots. The street opening proceedings to which the lessees of the defendant were parties, and which were set aside, and under which the city paid nothing, and claims nothing, were followed by an ejectment suit by the city against the same defendants. In that ejectment suit, there was an admission by defendants, that " the northern thirty feet of the Baccanné tract were, by the owners thereof, dedicated as a street now called Victor or DeVolsey Street, and that defendants have no claim of seisin or right of seisin therein." It is claimed that this admission was competent, and that the street opening proceedings were competent in connection with it, to show that the defendants in the ejectment meant Victor Street as laid down in the ordinance and the street opening proceedings to which they were parties. The admission was made for the purposes of that trial. Even if it could be used against defendants in another suit, we see in it nothing that can be construed into an admission that Victor Street as described by ordinance embraces thirty feet of the Baccanné tract. If the dedication was made, and it was in

contemplation to prolong Victor Street in that direction, the strip dedicated might be called Victor Street, but this is no declaration that Victor Street as described by ordinance runs through the Baccanné tract. The parties making the admission probably supposed that Victor Street would be opened over the thirty-foot strip dedicated from the Baccanné tract, and not that the Baccanné tract would be carried north to come to the centre of a yet to be established Victor Street.

There seems to be no pertinency in the contention of the learned counsel for respondent, that the city holds the Commons by title superior to any interfering claims. The evidence shows that the city conveyed to the representatives of Barsaloux, Baccanné, and DeVolsey any interest which it had in those concessions, and that the city has no title to the land in controversy except that derived from a dedication for street uses of a strip along the side of the Baccanné tract made by the legal representatives of Baccanné, after the city had for a valuable consideration compromised with them by releasing to them any part of the city Commons covered by the Baccanné survey.

We think that the judgment should be reversed and the cause remanded. The case is one which seems peculiarly inappropriate for a jury under our system of jury trial, which leaves so little scope for those directions from the judge which made the common-law system of trial by jury something very different from that in use in Missouri. We will suggest, in remanding the cause, that, if counsel see fit again to submit their issues to a jury in this case, it would be well, if they desire that an ordinary jury should have some conception of what facts they are finding in bringing in a verdict, to ask fuller instructions than were asked at the last trial.

Judgment reversed and cause remanded. All the judges concur.