STELLA SEEKINS
*vs.*
LAURENCE W. LOUGEE

Somerset.   Opinion, September 17, 1956.

*Bartolo M. Siciliano,* for plaintiff.

*Frederick Armstrong,*
*George M. Davis,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MURRAY, A. R. J., CLARKE J., did not sit.

BELIVEAU, J. On report. By agreement of the parties this cause is "reported to the Law Court upon the evidence or so much thereof as is legally admissible; that the matter will be reported on the stipulation that the Supreme Court shall determine the matter both as to fact and to law."

The only issue is the easterly line of the parcel of land described in plaintiff's Exhibit No. 3, a Quitclaim deed to Marcia Brown, the plaintiff's grantor, dated May 1, 1940, to wit:

"a certain lot or parcel of land at Yankee Hill, so called, situated in Lot Thirteen (13), Range One (1), in the unorganized Township now or formerly known as Taunton and Raynham Academy Grant, in said County of Somerset and State of Maine;

Said land is located easterly of and adjoining Lot 14 which was conveyed to this Grantee by deed dated June 17, 1937, and lies between prolongations easterly of the northerly and southerly lines of said Lot 14 to the water line of Moosehead Lake and bounded on the west by the easterly line of said Lot 14 as described in said deed to said Brown;"

Plaintiff acquired title to Lot 14, and the extension, by a Quitclaim deed from Marcia and Paul R. Brown, dated April 16, 1946. There is no description in this deed of the property conveyed other than reference to the several conveyances by which Marcia Brown acquired title. Defendant is the owner of Lot A lying southerly of Lot 14 and Lots B, C, and D easterly of Lot A. All of the lots referred to

are shown on plan entitled, "Subdivision of Lot 13 Range 1 Taunton & Raynham Township Somerset Co. Maine." dated January 1940 and recorded in Somerset County Registry of Deeds March 12, 1940 in Plan Book 8, Page 19.

The conveyance to Marcia Brown of the extension of Lot 14, was subsequent to the recording of the plan marked plaintiff's Exhibit No. 3.

The extension, according to the uncontradicted testimony of Hubert F. Bates, who surveyed this property, would cover an area of approximately 4,752 square feet.

It is the position of the plaintiff that the extension of Lot 14 goes beyond the easterly end as shown on the plan and includes, if the plaintiff's version is accepted, approximately 11,352 square feet to bring the easterly line to the low water mark. According to the plaintiff's theory it would also include a portion of the southwesterly corner of Lot C conveyed to the defendant on December 26, 1940, and described on the plan.

The plaintiff contends that regardless what the court may find to be the eastern limit of Lot 14 she is still entitled to a verdict because the defendant has not filed a disclaimer to any part of Lot 14 and the extension, which the defendant admits belongs to the plaintiff. This argument is not open to the plaintiff at this stage.

On this point our court has said:

"It is generally considered, when a case is submitted to the law court on a report of evidence, or on an agreed statement of facts. that all technical questions of pleading are waived, unless the contrary appears."

Pillsbury v. Brown, 82 Me. 450 at Page 455.

The order of the court below makes no reference to pleadings and for that reason are considered waived.

The deed to the plaintiff's grantor contains the only description of the property conveyed to the plaintiff by Marcia Brown. That description fixes the easterly line of the extension of Lot 14 "to the water line of Moosehead Lake." Because of that description it must be determined what was meant by "the water line" at the time of the conveyance to Marcia Brown.

In view of the fact that "to the water line" does not in itself give the court any assistance as to which of at least two "water lines," the low and the high was meant, we must go beyond the deed to establish the easterly line.

Dewey, J., in *Crafts* v. *Hibbard* said:

> "It is well settled that parol evidence cannot be introduced to contradict or control the language of a deed; but it is equally well settled that latent ambiguities may be explained by such evidence. Facts existing at the time of the deed, and prior thereto, may be proved by parol evidence, with the view of establishing a particular line as the one contemplated by the parties, when such line is left, by the terms of the deed, ambiguous and uncertain."

*Crafts* v. *Hibbard*, 4 Met. 438.

Our court in *Abbott* v. *Abbott*, 51 Me. 575 at Page 581 subscribes to this rule and further states it has been applied so often in real actions that no citation of authorities is necessary.

Probably the most convincing evidence is the plan, before referred to, which shows the water line on the easterly end of Lot 14 extension. Not only was this plan on record before the plaintiff acquired title but also on record prior to the time Marcia Brown accepted the deed of the extension of Lot 14 with reference made to the plan in that deed.

The irregular line on the plan shows the water line to be the high water line. The plaintiff had notice of this while

she was negotiating with Mrs. Brown. She not only had Mrs. Brown's deed to study, she also had a copy of the plan which showed definitely the eastern boundary of the extension. She had ample notice before the purchase of the land that the extension did not go beyond the line delineated on that plan. And again during these negotiations she had some talk with Mrs. Brown about the extension of Lot 14. Mrs. Brown informed Mrs. Seekins that she had "never seen any stakes down there." She further testified that after the snow had gone the next spring they went and looked for the stakes but could not find any. If in fact Mrs. Seekins bought the extension with the belief that the easterly line was at the low water mark she would not be looking for stakes to establish the easterly end of Lot 14.

The defendant testified that the plaintiff asked his permission to dig a channel from the low water mark to the high water line for her convenience and that this permission was granted. The plaintiff admits talking with the defendant but does not remember asking permission to dig a channel although they talked about the disposition of the material removed in the process of digging that channel to the plaintiff's land. The plaintiff having failed, in the defendant's opinion, to remove the material, according to their understanding, he in August 1949 forbade the plaintiff to continue with the work she had undertaken. She immediately stopped and, as far as the record is concerned, she never resumed operations.

We are satisfied from all the evidence that extension to Lot 14 went no farther easterly than the high water line shown on the plan and that the plaintiff's conduct prior to her purchase of this property and afterwards is convincing evidence that she, at that time believed, the extension of Lot 14 did not go beyond the high water line as shown on the plan.

*Judgment for the defendant.*